## Foster & Co. *versus* Runk.

109   291
140   150

A. conveyed a farm to B. by a deed containing the following reservation: "excepting and reserving thereout unto A. . . . . . all and all manner of metals and minerals, substances, coals, ores, fossils, and also all manner of compositions, combinations and compounds of any or all the foregoing substances, and also all valuable earths, clays, stones, paints and substances for the manufacture of paints upon or under the said tract of land." B. then leased the farm to C. for the manufacture of bricks with the right to use the clay thereon for that purpose, reserving a certain royalty on bricks made and sold. The next day A. also made a lease to C., for ten years from June 1866, with the privilege of renewal, granting the same privilege and under like conditions. Both leases were assigned to D. who took possession and manufactured bricks thereunder. D. renewed the lease with B., but not the one with A., and continued his possession and business after the expiration of the latter lease. D. refused to pay royalties to A. after 1873, claiming that A. had no title to the brick clay after his deed to B. and that his lease was therefore void. In a suit by A. against D. for royalties. *Held*—

(1) That the reservation in A.'s deed to B. included the clay suitable for making bricks, and was not restricted to the kind of clay from which paint could be manufactured.

(2) That said reservation was not void, as being as broad as the grant, but the latter passed the ordinary glebe, timber and waters; while the reservation, technically construed, might perhaps include everything which was the subject of the grant, yet the contracts of ordinary people are not to be so construed, but must be interpreted so as to carry out the manifest intention of the parties, as determined by viewing the subject matter thereof, as the mass of mankind would view it:

(3) That by virtue of D.'s holding over after the expiration of A.'s lease, the same continued in force against him.

March 13th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Carbon county*: Of January Term 1885, No. 264.

This was an action of covenant, by Charles M. Runk against Charles E. Foster and Henry Beineman, trading as C. E. Foster and Co., to recover royalty for bricks manufactured and sold by the defendants, under a lease made by the plaintiff to one W. D. Tombler and assigned to the defendants.

On the trial, before MEYERS, P. J., the following facts appeared: By deed dated December 9th, 1863, Chas. M. Runk and wife conveyed a certain tract of land or farm to Abby Bowman; the deed containing the following reservation: "Excepting and reserving thereout unto the said Charles M. Runk, his heirs and assigns, all and all manner of metals and minerals, substances, coals, ores, fossils and also all manner of

compositions, combinations, and compounds of any or all of the foregoing substances, and also all valuable earths, clays, stones, paints, and substances for the manufacture of paints upon or under the said tract of land."

On June 14th, 1866, Abby Bowman leased and demised the said farm to W. D. Tombler, "for the purpose of manufacturing brick and putting thereon a brick factory, with the privilege of taking and using all clay and sand on said farm and premises, excepting the clay or sand within fifty feet of the house or barn." By this lease and subsequent modifications, Tombler bound himself to manufacture two million bricks per annum and pay Abby Bowman a royalty of fifteen cents per thousand bricks manufactured and sold; a failure to manufacture said number in any one year not to work a forfeiture, unless there should be such a failure for three sucessive years.

Tombler assigned all his right and interest in this lease to the defendants, December 15th, 1866.

On June 15th, 1866, Runk executed a lease to Tombler by which he granted him "the privilege and right to take from the farm, by said Runk conveyed to Abby Bowman, all the clay suitable for making brick." This right to continue for a term of ten years with the privilege of renewal for a like period if Tombler should desire. This lease reserved a royalty to Runk of fifteen cents per thousand bricks manufactured and sold under it; the privilege to be void on failure to manufacture bricks at any one period for the space of three consecutive years as specified in the agreement made with Abby Bowman. On December 15th, 1866, Tombler assigned this lease also to the defendants; and on March 13th, 1867, the number of bricks required to be made annually was reduced to one million.

The defendants renewed their lease with Abby Bowman, upon its expiration.

The Runk lease was not renewed at its expiration and nothing was paid on it after December 31st, 1873, the defendants denying liability under it and claiming that their continued possession was under the Bowman lease. Runk afterwards brought this suit to recover royalties under his lease.

The defendants submitted, *inter alia*, the following points:

1. "The reservation in the deed of C. M. Runk to Abby Bowman for the tract of land upon which this contract is founded, is confined and limited to the clay on the said land for the manufacturing of paint, and that if the jury believe that Foster and Beineman used only the brick clay, the plaintiff cannot recover in this case, and the verdict must be for the defendants."—Refused. (First assignment of error.)

3. If C. M. Runk had no title under his reservation to the brick clay, but is confined to the clay, &c., used in the manufacturing of paint, he could not enter into any contract for the brick clay or grant any privilege to use the brick clay in this tract of land, and any contract made by him for this purpose would be void and of no effect."

Answer. " As the proper construction of the reservation in the deed of Runk to Mrs. Bowman includes brick clay, the point is not affirmed." (Third assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows : " By continuing in possession of the premises and manufacturing bricks after June 15th, 1876, this would constitute the defendants as tenants from year to year and make them liable to a royalty for bricks manufactured and sold according to the terms of the lease."

Verdict for plaintiff and judgment thereon ; whereupon the defendants took this writ assigning for error the answers to their points as above, and the part of the general charge quoted.

*Frederick Bertolette*, for plaintiffs in error.—The word " clay," with all the other substances named in connection with it in the reservation, was limited to clay for the manufacture of paint. This is clear from the following clause of the reservation, " and also all manner of compositions, combinations and compounds of any or all of the foregoing substances, and also all valuable earths, clays, stones, paints and substances for the manufacture of paints upon or under said tract of land." The word " paint " is used particularly. If it were not the grantor's intention, to limit the reservation to clay used in making paint, the word paint is unnecessary as every other species of mineral clay is mentioned that would enter into the composition of paint or any other compound. An exception in a deed must be construed most strongly against the grantor : Grub *v.* Grub, 5 Out., 15 ; Dunham *v.* Kirkpatrick, 5 Out., 43 ; Klaer *v.* Ridgway, 86 Pa. St., 529. In view of this principle, and remembering that the deed to Abby Bowman was in fee simple with a clause of special warranty, the fair interpretation is, that if Runk intended to convey this farm, as appears by his deed, the reservation was limited to the clay for manufacturing paint. Any other interpretation would render the reservation as broad as the grant, and therefore void : Shoenberger *v.* Lyon, 7 W. &. S., 184.

*Freyman & Kiefer*, for defendant in error.—The words " for the manufacture of paints," in the reservation in the deed from Runk to Mrs. Bowman, clearly refer to " substances " and not

to " clays, earth, stones." The land granted in the deed is a farm, and the reservation of mining and mineral rights, and the right of using and taking earths, clays, stones and paints useful for manufacturing purposes, is not equal to or greater than the estate granted. The land is agricultural, and as such, all the mineral and mining rights may be reserved. Besides, the plaintiffs in error seek to place. themselves in the place of grantees in a deed from Runk. But, this is not a contention between the grantor and the grantee, and the question of the validity of the reservation does not arise in a suit upon the lease.

Mr. Justice GORDON delivered the opinion of the Court, October 5th, 1885.

Although there were a number of exceptions taken to the ruling of the court below which are here assigned for error, yet we regard the third point of the defendants below and the answer to it as embracing every thing that is material in this case. If Runk in fact owned the brick clay found upon the tract of land sold to Abby Bowman, then, of course, his lease to Tombler, the assignor of the defendants, was not only good when made, but by virtue of the holding over by the lessees, continued to run down to the time of the bringing of this suit.

In that case, there was but one alternative left to Foster & Co., either to pay the rent according to the terms of the lease, or to turn out and abandon the premises to their landlord.

If the fact as above stated be established, then the question whether they could or could not defend on the Abby Bowman lease, needs no consideration, and all points and assignments relating to it disappear from the contention as having no material relevancy to it. In that event, the answer to the defendants' first point, which affirms the insufficiency of the defendants' evidence to impeach Runk's title, must be regarded as correct.

What then, was the character of that title? It is found in the reservation contained in his deed to Abby Bowman of December 9th, 1863, and reads as follows: " and also all valuable earths, clays, stones, paints and substances for the manufacture of paints upon or under the said tract of land." One would suppose that this was broad enough to embrace brick clay, and the more so as " all valuable clays " are specially reserved.

But the ingenuity of counsel has devised two objections to this conclusion plain and obvious as it seems to be. (1.) It is urged that the reservation is to be understood as only of that kind of clay from which paint can be manufactured. Such, however, is not the force of the language here made use of.

It may, indeed, be that the paint here spoken is a species of clay, and that as such it is "valuable," but clay is also valuable for the manufacture of brick, and as the reservation is of "all such clays," the question is not what may or may not be manufactured from it, but whether it is valuable for any purpose. Beside this, it is clearly manifest that the language here used is intended to distinguish "earths, clays and stones," from "paints and substances for the manufacture of paints."

In ordinary language clays, and chromes or paints are substances altogether different, and no one not posted in mineralogy, would suppose that the former included the latter. We cannot, therefore, agree to entertain the construction here attempted.

(2.) It is said that the reservation being as broad as the grant is therefore void, and the whole property vests in Abby Bowman. But neither can we entertain this proposition. From a technical and scientific standpoint undoubtedly the reservation embraces everything that is the subject of grant. "All manner of minerals, substances, coals, ores, fossils, and also all manner of compositions, combinations, or compounds of any or all of the foregoing substances, and also all valuable earths, clays, stones, paints and substances for the manufacture of paints," certainly embrace all things of an inorganic character, and technically would leave nothing for the grantee. But we cannot thus construe the contracts of ordinary people, for if we did so the intention of the parties would, as a rule, be defeated. For such contracts the proper construction is that which is made by viewing the subject matter of the contract as the mass of mankind would view it, since it is most reasonable to suppose that such was the aspect in which the parties viewed it: Schuylkill Navigation Co. v. Moore, 2 Wh., 477 ; Gibson v. Tyson, 5 Watts, 34; Dunham & Short v. Kirkpatrick, MS. Construing the deed before us by this, the only proper rule, and there is no doubt but that, notwithstanding the very general character of the reservation, there was something left upon which the grant could operate ; that the latter did not include the ordinary glebe, timber or waters. If, however, these and the like were not included in the reservation, that part of the deed must be considered as valid, and as continuing in the plaintiff the right to the minerals, clays and paints.

This establishes the validity of the lease of the brick clay to Tombler, and as it is by virtue of that lease that the defendants hold the premises, it is certain that by its terms they must abide.

　　　　　　　　　　The judgment is affirmed.