## MARRERO *v.* LÓPEZ ET AL.

### APPEAL from the District Court of San Juan.

No. 429.—Decided December 16, 1909.

BY MR. JUSTICE WOLF, MR. JUSTICE FIGUERAS concurring.

REVIEW OF THE FACTS—STATEMENT OF THE CASE OR BILL OF EXCEPTIONS REQUIRED.—The only way in which the facts of a trial may be reviewed is by a bill of exceptions or statement of the case.

FINDINGS OF FACT—NO DUTY IMPOSED UPON JUDGE.—The only reference to findings of fact is in section 233 of the Code of Civil Procedure and no duty is imposed upon the judge to make such findings.

ID.—IN STATES WHERE REQUIRED.—In States where findings of fact are required, it is the duty of the judge to state separately the findings of fact and conclusions of law.

ID.—WHEN CONSIDERED AS SUBSTITUTE FOR BILL OF EXCEPTIONS OR STATEMENT OF THE CASE.—Before findings of fact can be considered as a substitute for or equivalent to the bill of exceptions or statement of the case, the record must show that the court below so intended and the parties so understood, otherwise an appellee might be deprived of his right to have all facts reviewed.

RECORD—OPINION OF THE COURT.—The opinion of the court forms no real part of the record.

By Mr. Justice MacLeary, Chief Justice Hernández concurring.

OPINION OF THE COURT SERVES AS FINDINGS OF FACT AND CONCLUSIONS OF LAW.—
The opinion of the court being signed by the judge and filed in the record
may be taken as findings of fact and conclusions of law.

HOMICIDE COMMITTED BY OVERSEER—RESPONSABILITY OF PRINCIPAL.—Where an
overseer in making the rounds of the property under his custody asks a boy
for a drink of water and the latter declines and is struck by the former, and
when running away is shot by the overseer, such an act not being within
the scope of the overseer's duties, and not in the line of his employer's
business, and beyond the scope of his authority, does not bind the principal.

ID.—In such case defendant cannot be held for the tortuous act of his codefendant
in slaying the retreating lad, no matter what the provocation.

The facts are stated in the two opinions.

*Messrs. Manuel F. Rossy and Roberto H. Todd* for appellant.

*Messrs. Juan Hernández López and José L. Pesquera* for respondent.

### OPINION OF MR. JUSTICE WOLF.

The appellee in this case alleges in his brief that this court cannot enter into a consideration of the errors alleged by the appellant because the facts on which the court below based its judgment have not come before us by virtue of a statement of the case. Not only is this true, but there is nothing in the record beyond the opinion of the court below which would enable us to examine whether the complainant and appellant made out a case there. It is urged by him, however, that we may regard the opinion of the court below as containing "findings of fact." The only way which is expressly given us to review a judgment, as such, is by a bill of exceptions. Nevertheless, we have recognized the right of an appellant to bring up his facts by a statement of the case as in the case of a bill of exceptions, due notice of the intention to submit for approval to the judge of the court below is required to be given. (Secs. 216 to 219, 223 to 226 of the Code of Civil Procedure.)

The only reference to "findings of the court" in the Code of Civil Procedure is contained in section 233 of that Code. In Porto Rico the duty to prepare findings of fact is not imposed upon the judge of the district court. It is undoubtedly true that such is the practice in various States and notably in the States of California, Idaho and Montana. (See sec. 632 to 637, Code of Civil Procedure of California; sec. 3483 to 3485, Code of Civil Procedure of Idaho; sec. 1111 to 1117, Code of Civil Procedure of Montana.) In these states, however, when the trial judge must, or may, try question of fact it is the duty of the court to state separately findings of fact and conclusions of law. It is probable that if a case should be presented to us in which it was the obvious intention of the trial court, and so understood by the parties, to make findings of fact that we should regard the opinion so presented and signed by the judge as the equivalent of a statement of the case or of a bill of exceptions; but we see no evidence in this appeal that there was any such intention on the part of the court below. Where the practice of making findings of fact exists the parties are given an opportunity before judgment to ask for special findings in the same manner as they might ask the court to instruct a jury. Then the parties know that the court intends to make its judgment in that form. If a mere opinion could serve to certify the facts of a court below it might easily happen that the trial court basing its judgment on one state of facts, and the appellee relying on other defenses, a case might be reversed without the other defences relied upon by the appellee, ever passing in review before the appellate court. The opinion of the courts below, as such, forms no part of the record. This is one of the essencial points decided by this court in the case of *José Hernández y Ríos* v. *Juana García Rivera,* 10 P. R. Rep., 322. To this same effect is the decision of the Supreme Court of Illinois in the case of *Pennsylvania Co.* v. *Albert Versten,* 15 L. R. A., 798, and note. There being nothing in the record for us to review, I think the judgment should be affirmed.

CONCURRENT OPINION RENDERED BY MR. JUSTICE MACLEARY.

This action was brought in the District Court of San Juan against Antonio López Martínez and Nicomedes López, for damages caused by the death of the plaintiff's son, the same being estimated at the sum of ten thousand dollars ($10,000). On trial of the case, judgment was rendered in favor of the plaintiff against the defendant Nicomedes López, but in favor of the defendant, Antonio López Martínez, against the plaintiff, Sinforoso Marrero. It appears from the record that one night during the month of April, 1907, two sons of the plaintiff were sleeping in a tobacco barn on the property of the defendant, Antonio López Martínez, guarding the tobacco which belonged in equal shares to their father and the owner of the land. The defendant, Nicomedes López, was the overseer of his codefendant, Antonio López Martínez, and during the night, about 12 o'clock, the overseer was making the rounds of the property inspecting the same and called at the barn, awaking the boys. He asked them for a drink of water. One of them replied that they had no water; whereupon the overseer struck him and the boy escaped from the building and ran away. Thereupon the overseer, Nicomedes López, drew a pistol and fired at the fugitive, the bullet taking effect in his heart, from which wound he died in a few minutes. Afterwards, the slayer was tried in the criminal court, convicted and sentenced to the punishment of three years in the penitentiary.

The criminal proceedings having terminated, the father of the deceased lad, who was about 15 years of age, brought a civil action against the defendants, as heretofore stated. Nicomedes López made no defense and judgment was rendered against him by default. Antonio López Martínez defended the case and contended that he was not responsible for the illegal acts of his codefendant, Nicomedes López. On the trial of the case, the district judge rendered an opinion, somewhat

elaborate, which may be taken as findings of fact and conclusions of law, being signed by the court and filed in the record.

This opinion reads as follows:

"In this case no other evidence has been introduced than that of the plaintiff, and from an examination of the same we arrive at the conclusion that during the month of April, 1907, plaintiff was gathering in a tobacco crop which he had planted on the lands of Antonio López, one of the defendants, the profits to be divided by half between each; the tobacco being warehoused in a shed which the plaintiff had built on the same property, and, in order to guard said tobacco during the night, he had put as watchmen his two sons, José and Agustín, of about 13 and 15 years of age, respectively.

"The defendant, Antonio López, had at that time as overseer on that property the other defendant, Nicomedes López, who, on the night of the 7th of April, went to the shed and asked the boy, Agustín Marrero, for some water, and on the latter replying that there was none, slapped him, and when Agustín Marrero ran away fired his pistol at him, killing him. He was, on that account, indicted for voluntary manslaughter, and convicted by a jury of involuntary manslaughter, and, consequently, sentenced by the court to three years in the penitentiary.

"Based on the above facts, a complaint has been filed by the father of the deceased against Nicomedes López, who committed the deed, and against Antonio López, as his employer, to recover from them the sum of $10,000 and costs.

"Antonio López denied the complaint and alleged that there was no action against him, but the other defendant made no defense.

"Under the above facts, is it correct to render a judgment against both defendants such as the plaintiff claims?

"According to section 1803 of our Civil Code, a person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.

"Since according to our Civil Code, now in force, a judgment of conviction for crime does not carry along with it a civil liability for damages caused by the same, as was the case in our former Penal Code, such civil action arising from a crime may be prosecuted in accordance with the section cited, because in this respect the idea of guilt is embodied in that of crime.

"Therefore, if Nicomedes López committed a guilty act, thereby causing damages to Agustín Marrero, he is liable to him for damages.

"From the facts as shown by the plaintiff's evidence, it appears that the defendant, Nicomedes López, caused the death of Agustín Marrero under such circumstances that the killing was not excusable, and therefore he was guilty by so doing and must be held liable for the damages caused. And the father is entitled to claim such damages, in accordance with section 60 of the Code of Civil Procedure.

"The sum of $10,000 claimed from him seems to us excessive, considering the means of subsistence of Agustín Marrero and his age at his death, and although no special damages have been alleged and shown, it seems to us that $3,000 is a reasonable amount of damages.

"But the real point in controversy in this case is whether Antonio López is also liable for damages on account of the acts committed by his overseer, Nicomedes López.

"The plaintiff cites in support of his claim paragraphs one and four of section 1804 of the Civil Code, which read as follows:

" 'The obligation imposed by the preceding section, namely, section 1803 hereinbefore cited, is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.'

\*          \*          \*          \*          \*          \*          \*

" 'Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employes in the service of the branches in which the latter may be employed or on account of their duties.

"From a perusal of the above it is clear that the owners or directors of an establishment or enterprise are liable for the damages caused by their employes when said damages are caused by them in the discharge of their duties or on account thereof.

"So that, on the other hand, if the damages were not caused by the employe in discharging duties assigned to him by his employer or on account thereof, the latter must not be held liable for damages caused by the former.

"Therefore, the point to be decided is, whether or not Nicomedes López caused that death in the discharge of his duties or on account thereof, acting in his capacity as employe of the defendant, Antonio López.

"Although from the evidence it appears that the duties of the employe, Nicomedes López, were to manage and watch the property, in which the deed was done, in behalf of his employer, it has not been shown that it was a part of said duties to wound and kill a third

party, because the latter did not want to, or could not, give him some water.

"We do not think that from the mere fact that the employe was making the rounds of the property under his keeping when he caused the injury, it could be inferred that, since he was discharging his duties, his employer should be responsible for the death caused by him, as his punishable action was not included among said duties.

"What is important, therefore, is to find out whether the punishable act which was committed was a part of the duties of the employe or was committed on account thereof; and we are of opinion that it has not been proven that acts of the same nature as those in the case at bar were included among the duties pertaining to such employe, nor among the instructions which he might have received from his employer.

"It is fair that employers should be held liable for the acts of their employes when the latter act in their behalf; but this does not warrant the conclusion that the employer should be held liable for any act or punishable or negligent omission on the part of the employe from the mere fact that the employe was discharging his duties, when the act committed by the latter was not included among said duties.

"To accept the view for which the plaintiff contends in this case would be similar to deciding that because my cook, for instance, while discharging her duties in the kitchen, had there a quarrel with a third party who called on her, and for private grievances between them caused him an injury, I should be held liable therefor, simply because the deed was done in the place where she had to discharge her duties. The mere fact that the quarrel between Nicomedes and Agustín, and the latter's subsequent death, took place within the property managed by the former is not sufficient, by itself, to make the employer liable, if it is not shown that the injury was caused by the discharge of some duty imposed by the employer, or as a consequence thereof.

"Finally, we think that the plaintiff has not proved the liability of the defendant, Antonio López, who must be exonerated of the claim for damages with costs in his favor, and that Nicomedes López must indemnify Sinforoso Marrero in the sum of $3,000 for the illegal killing of his son, Agustín Marrero."

The only question which arises here on appeal is as to the liability of the employer for the acts of his employe; the plaintiff and appellant contending that under our Statute (Civil Code of Porto Rico, sec. 1804), the owner of the farm is liable

for the damages caused by his overseer, claiming that the latter was acting in the capacity in which he was employed and in the discharge of his duties. (See fourth paragraph of the section cited.)

The defendant on appeal claims that the illegal act of the overseer, in shooting the boy, was a deviation from the course of his employment, and that the employe was not executing the business of his employer, and, consequently, that the employer was not liable. The general principles governing this class of cases are well expressed by the Supreme Court of Connecticut in a case decided more than 30 years ago. Mr. Justice Pardee says:

"The rule is that for all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible." (*Stone* v. *Hills,* 45 Conn., 44; 29 Am. Rep., 636.)

It will be found that the strong current of subsequent decisions follows the channel cut by the principle herein designated, and the opinion is amply sustained by numerous authorities cited in the text, and is further illustrated by a note, in the American Reports, citing numerous authorities.

The appellant cites in support of his proposition a paragraph from the work of Smith on Master and Servant, which reads as follows:

"If an employe, in the execution of the orders received from his employer and by his own negligence occasions damage to a third party, the employer will be responsible for it, notwithstanding the act of the employe may not be necessary for the fulfillment of his duties and even may be contrary to the orders of his employer." (Smith on Master and Servant, p. 157.)

He also cites a case from 5 Wheaton to the following effect:

"Any act within the scope of the power or trust conferred upon the employe binds the employer." (*Mechanics' Bank* v. *Bank of Columbia,* 18 U. S. [5 Wheaton], 326.)

The case between the two banks, cited from 18 U. S. is not at all parallel to the facts presented in the record, though the general principle is that, in the diversified duties of a general agent, the liability of the principal depends on the facts of whether or not the act of the agent was done in the exercise of the powers delegated and within the limits prescribed. We do not think that these authorities sustain the case of the appellant, as shown by the facts.

There is an Iowa case which is very closely in point, in which it is said, that persons who employ a watchman to guard a building are not liable for his acts in shooting another person who is running away from the building. (*Golden* v. *Newbrand,* 52 Iowa, 59; 35 Am. Rep., 257.)

This Iowa case is cited with approval by the Supreme Court of Nebraska in the case of *Davis* v. *Hougtelin,* 14 L. R. A., 737. In this case, the court says in the opinion:

"The test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether it was committed in the prosecution of the master's business.

\*        \*        \*        \*        \*        \*        \*

"If the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities."

Applying this test to the facts of the present case it seems clear that the appellee cannot be held liable for the tortious act of his codefendant, in slaying the retreating lad, whatever may have been the provocation.

The same point is considered and decided by the Supreme Court of Missouri, in which the opinion uses the following language:

"The principle of *respondeat superior* applies only when what is complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business, and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such case whether the injury, with which it is sought to charge him, is the result of negligence, unskillful or of wrongful conduct, for he must choose fit agents for the transaction of his business. But if his business is done, or is taking care of itself, and his servant, not being engaged in it, nor concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether provoked or unprovoked, commits an assault upon another, when that has and can have no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed, then the wrong is the purely personal wrong of the servant, for which he, and he alone, is responsible." (*Haehl* v. *Wabash Ry. Co.*, 119 Mo., 325.)

Another case in Connecticut also sustains the same proposition. The Supreme Court of that State says, in a pertinent opinion, that:

"If a servant's deviation from the strict course of his employment or duty is slight and not unusual, the court may determine, as matter of law, that he is still executing the master's business; and if the deviation is very marked and unusual, it may likewise determine that he is not executing the master's business, within the rule that the master is liable for his negligence." (*Ritchie* v. *Waller*, 63 Conn., 155; 27 L. R. A., 161; 2 Atl., 29.)

The justice delivering the opinion in this case says: "We think the fact that the deceased was retreating at the time the fatal shot was fired, shows conclusively that it was not fired for or with the intent of protecting" the property of the

principal or in the line of the night watchman's duty. We may well draw the same inference in the case at bar.

Taking all these authorities into consideration, together with section 1804 of our Civil Code, we are of opinion that there was no liability on the part of the defendant, Antonio López Martínez, under the facts as set out in the record, requiring him to respond in damages for the illegal acts of his overseer in killing the plaintiff's son. The overseer was certainly acting beyond the scope of his authority and not in the line of his employer's business and far beyond the scope of his duty, putting himself beyond the reach of his employer's control and outside the limits of his instructions express or implied. It would be a great hardship in such cases and manifestly unjust to hold an employer liable for the illegal and outrageous act of his employe in the slaughter of an innocent boy, whether the employe might have been guilty of manslaughter or murder in such killing. For the reasons herein stated, the judgment of the district court should be in all things affirmed.

*Affirmed.*