421 A.2d 1099

**SHAWVILLE COAL COMPANY, Appellant,**

v.

**Roger MENARD.**

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed Sept. 26, 1980.

Constance B. Foster, Philadelphia, for appellant.
Joseph Colavecchi, Clearfield, for appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order denying appellant's motion for summary judgment and dismissing appellant's complaint against appellee.

In *Bollinger v. Palmerton Area Com. Endeavor, Inc.*, 241 Pa.Super. 341, 350, 361 A.2d 676, 680 (1976), we stated:

> [I]n passing upon a motion for summary judgment, "it is no part of our function to *decide issues of fact but solely to determine whether there is an issue of fact to be tried* and all doubts as to the existence of a genuine issue as a material fact must be resolved against the party moving for summary judgment. *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968)." *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 203, 280 A.2d 570, 573 (1971) (emphasis added).

Examined in this light, the record, which is composed only of the parties' pleadings,[1] may be summarized as follows.

The action is for ejectment and an accounting. Appellant is a Pennsylvania corporation with its principal place of business in Shawville, Pennsylvania. Appellee is an individual who does business under the name of Menard Dodge, a company located in Clearfield, Pennsylvania. Appellant brought the action when it discovered that appellee was removing coal and other valuable minerals from a tract of land in Clearfield County that appellee owned, but that appellant claimed the right to mine for coal and other minerals.

Prior to 1922, the tract in question was owned by the Five Brothers Coal Company. On July 20, 1922, Five Brothers

---

1. Appellant served interrogatories on appellee but appellee objected and refused to answer them. This may explain why appellant filed a motion for summary judgment rather than a motion for judgment on the pleadings, the appropriate motion where only the pleadings are before the lower court. *See* Goodrich–Amram 2d § 1034(a):1 (1976).

conveyed the tract [2] to one Reuben McDonald. The deed, however, contained the following reservation:

Reserving, however, from the above described premises, all the coal and other minerals, together with the right of ingress and regress, into and from said land, for the purpose of examining and searching for and of mining and preparing said coal for market; and removing and transporting the same and other coal, now owned or hereafter to be purchased or operated, by [Five Brothers], its successors and assigns; and for these purposes [Five Brothers] may build railroads, roads and drains upon or under the surface of said land, locate and erect such buildings and structures including miners houses, as may be necessary and proper for the convenient use and working of the mines with the right to deposit the waste or dirt of said mines upon the surface convenient thereto ... [Mc-Donald] for himself, his heirs and assigns, hereby releasing all claims for damages to said land, the waters therein and thereon and the buildings now or hereafter to be erected thereon, caused by exercising the rights aforesaid and with the right to [Five Brothers], its successors and assigns, to remove from said premises any houses erected thereon by them.

Also reserving unto [Five Brothers], its successors and assigns, all the timber growing or lying on said premises, as long as they are mining or removing the coal therefrom. When said mining operations have been abandoned, the timber remaining shall belong to [McDonald].

On November 26, 1924, Five Brothers granted to one S. T. McClure the rights and privileges reserved in its deed to McDonald. When McClure's will was probated in 1951, his interest in the property passed to his wife Eulala McClure. On December 30, 1955, Eulala McClure granted the River Valley Construction Company

all the rights and privileges she [McClure] is now vested with, which were reserved to Five Brothers Coal Compa-

2. Five Brothers conveyed a tract containing 81.62 acres of which the tract in question, containing 34.75 acres, was a part.

ny, its successors and assigns, in a certain deed by Five Brothers Coal Company to Reuben W. McDonald, dated the 20th day of July, 1922.

The deed, however, contained the following reservation: Excepting and reserving, however, from this grant all the coal and other minerals together with the right, jointly with [River Valley], its successors and assigns, of ingress, egress and regress into and from said land for the purpose of examining and searching for and mining and preparing said coal for market and removing and transporting the same and other coal now owned or hereafter to be purchased, or operated, by [McClure], her heirs and assigns, and for these purposes to build railroads, roads and drains upon or under the surface of said land, locate and erect such buildings and structures as may be necessary and proper for the convenient use and working of the mines with the right to deposit the waste or dirt of said mines upon the surface convenient thereto. Said [River Valley], for itself, its successors and assigns, hereby releasing all claims for damages to said land, the waters therein and thereon and the buildings now or hereafter to be erected thereon caused by exercising the rights aforesaid.

On August 17, 1956, River Valley quit–claimed to Reuben McDonald and his wife Catherine all rights it may have received from the December 30, 1955, deed from Eulala McClure. On November 23, 1977, the McDonalds conveyed their entire interest in the tract in question to appellee. Meanwhile, on November 11, 1969, Eulala McClure died testate and devised her interest in the tract to John E. Funk, Mary Jane Williams, and Jane E. Smith. On April 27, 1978, Funk and his wife Monique, Williams and her husband Crawford, and Smith and her husband Harry conveyed to appellant "All the coal, other minerals, mining rights, and all other privileges now vested in the Grantors which was [sic] reserved to Eulala McClure in a certain Deed from Eulala McClure, widow, to River Valley Construction Company, dated December 30, 1955."

In its opinion accompanying its order denying appellant's motion for summary judgment and dismissing the complaint,

the lower court reasoned that the reservation clause in Eulala McClure's 1955 deed to River Valley was meaningless because it reserved only rights that the deed had in fact granted to River Valley. The court relied on *Shoenberger v. Lyon*, 7 Watts & S. 184, 194 (1838), for the proposition that "[a] reservation which is as large as the original grant is void, and the grant is valid." By this reasoning, since all of Eulala McClure's rights to the tract passed to River Valley, and ultimately to appellee, appellee owned the right to mine the coal under the tract.

In *Highland v. Commonwealth*, 400 Pa. 261, 283, 161 A.2d 390, 401, *cert. den.*, 364 U.S. 901, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960), the Supreme Court set out certain guidelines for the interpretation of deeds:

> "Among such rules are . . . (1) that the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to *all* the language of the instrument and no part shall be rejected if it can be given a meaning; (3) the language of the deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." (*Quoting Yuscavage v. Hamlin*, 391 Pa. 13, 16, 137 A.2d 242, 244 (1958), emphasis supplied.)

Moreover, in *Richardson v. Clements*, 89 Pa. 503, 505 (1879), the Court said that

> when the language making an exception or reservation in a deed, is doubtful, it should be construed more favorably to the grantee. It is only when it is doubtful, that this rule can be applied. It has no place when the language is sufficiently clear to define the character and extent of the exception or reservation.

*See Walker v. Walker*, 153 Pa.Super. 20, 33 A. 455 (1943). Finally, in *Foster & Co. v. Runk*, 109 Pa. 291, 2 A. 25 (1885), where the deed contained grant and reservation clauses that

were seemingly identical, the Court made a particular effort to find meaning in the reservation clause, stating:

> From a technical and scientific standpoint undoubtedly the reservation embraces everything that is the subject of grant .... But we cannot thus construe the contracts of ordinary people, for if we did so the intention of the parties would, as a rule, be defeated. For such contracts the proper construction is that which is made by viewing the subject matter of the contract as the mass of mankind would view it, since it is most reasonable to suppose that such was the aspect in which the parties viewed it. 109 Pa. at 295, 2 A. at 27.

Here, Eulala McClure's 1955 deed granted River Valley "all the rights and privileges" that had first been reserved by Five Brothers in its 1922 deed to McDonald and then granted by Five Brothers in its 1924 deed to S. T. McClure. These rights and privileges included (1) "all the coal and other minerals" on the tract, (2) the right of "mining . . . , removing and transporting the same and other coal, now owned or hereafter to be purchased," and (3) the right to "all the timber" on the tract "while mining or removing the coal therefrom". At the same time, the deed reserved to Eulala McClure (1) "all the coal and other minerals" on the tract, and (2) the right *"jointly* with [River Valley] of mining . . . said coal . . . and removing and transporting the same and other coal now owned or hereafter to be purchased . . . by [McClure]" (emphasis added). When these two lists of rights and privileges are compared, it will be seen that they are not identical. If Eulala McClure had said to River Valley, "I *give* you the right of 'removing and transporting the same and other coal,' which right I acquired through my husband from Five Brothers, but at the same time I *reserve* the right of 'removing and transporting the same and other coal,' " then indeed it might be said, as did the lower court, that her reservation was as large as her grant, and that the reservation was therefore void and the grant valid. However, what Eulala McClure said to River Valley was not this, but was "I *give* you the right of 'removing and transporting the same and other coal,' which right I acquired through my

husband from Five Brothers, but at the same time I *reserve* the right *'jointly with [you]'* of 'removing and transporting the same and other coal.'" Thus Eulala McClure did not by her reservation take away from River Valley all that she had given it by her grant. By the grant, *only* River Valley could remove and transport the same and other coal. The reservation cut down this grant in that after the reservation, *both* River Valley *and* Eulala McClure could remove and transport the same and other coal. Therefore, after the reservation, River Valley had two rights that it had not had before the grant: first, it could mine and remove coal from the tract (not exclusively, to be sure, for so could Eulala McClure); and second, it could transport other coal from an adjoining tract (again, not exclusively, for so could Eulala McClure).[3] Finally, there was a third right that River Valley got by the grant and that was not taken away by the reservation. By the grant Eulala McClure said to River Valley, "I give you 'all the timber' on the tract while you are 'mining or removing the coal therefrom', which right I

**3.** River Valley has a right to mine and remove coal from the tract notwithstanding the language in the reservation stating that McClure has a right to "all the coal and other minerals" under the tract. This language contradicts the later language in the reservation, which we have relied upon, that McClure only has a *joint* right with River Valley to "remov[e] and transport [ ] the *same* and *other* coal." (Emphasis added.) Appellant tries to avoid contradiction by suggesting that McClure reserved all the coal rights for herself, but granted River Valley only a joint "wheelage" right, that is, a right to transport coal from an adjoining tract. This interpretation, however, is not persuasive because the deed specifically states that the *joint* rights of River Valley are not just "wheelage rights", but also mining rights.

We believe our interpretation of the deed is preferable to one giving effect only to the part of the reservation reserving for McClure all the coal and other minerals under the tract. Were we to adopt such an interpretation of the deed, we should have to ignore the language giving River Valley a *joint* right to mine the tract and with it, necessarily, the language giving River Valley a *joint* right to transport other coal from an adjoining tract. River Valley would be left only with a right to timber on the tract; this right would be at least suspect since the 1922 deed reservation suggests that the timber right was appurtenant to a mining right. Without the timber right, River Valley would receive nothing by virtue of the 1955 deed, and the reservation in that deed would necessarily have to be invalidated for the conveyance to be valid.

acquired through my husband from Five Brothers." In her reservation, she made no reference to this right; she therefore did not take it back, and River Valley retained it.

 McClure's grant to River Valley of the right to mine and remove coal from the tract constituted valuable consideration for the deed notwithstanding the fact that River Valley had to share this right with McClure. It is established that there may be many different owners of the minerals underlying a tract. *See e. g. Beulah Coal Mining Co. v. Heihn*, 46 N.D. 646, 180 N.W. 787 (1920); *Gill v. Fletcher*, 74 Ohio St. 295, 78 N.E. 433 (1906). Two or more parties may mine for coal or other minerals either as the result of a license being granted to one or more of them, *see e. g. Jennings Bros. & Co. v. Beale*, 158 Pa. 283, 27 A. 948 (1893); *Gloninger v. Franklin Coal Co.*, 55 Pa. 9 (1867); *The Johnstown Iron Company v. The Cambria Iron Company*, 32 Pa. 241 (1858), or as the result of a tenancy–in–common, *see e. g. Virginia Coal & Iron Co. v. Hylton*, 115 Va. 418, 79 S.E. 337 (1913). Though River Valley's nonexclusive right to mine the tract was less valuable than an exclusive right would have been, it nevertheless had value. *See e. g. Jennings Bros. & Co., supra; Gloninger v. Franklin Coal Co., supra; The Johnston Iron Company v. The Cambria Iron Company, supra.*

 Moreover, River Valley's second joint right with McClure, the right to transport River Valley's other coal from an adjoining tract, also constituted valuable consideration for the deed. In *Kormuth v. U.S. Steel Company*, 379 Pa. 365, 108 A.2d 907 (1954), *cert. den.*, 349 U.S. 911, 75 S.Ct. 600, 99 L.Ed. 1246 (1955), the grantor conveyed coal and other mineral rights while reserving surface rights. The clause granting the coal rights included the following language:

> together with . . . *right of way into, upon and under said land at such points in such manner as may be proper and necessary* for the purpose of . . . mining . . . and carrying away said coal; Hereby waiving surface support . . . ; [and] together with the privilege of mining and removing through said described premises *other coal belonging to*

*the [grantee], . . . its successors and assigns, or which may hereafter be acquired.* (Italics supplied) [by court].

379 Pa. at 367, 108 A.2d at 908.

A dispute arose when the grantee's assignee conveyed *only* its easement rights to a third party. The grantor's assignee claimed that the grantee's assignee did not have the right to alienate its easement rights to a third party that did not also possess the right to mine the coal under the tract. The Supreme Court held in favor of the third party's right to transport its coal across the tract because it construed the original deed to have granted two separate and distinct rights that could be alienated independently of each other. Said the Court:

[The deed] conveyed the 300 acres of coal, with the 'right of way into, upon and under said land *at such points and in such manner as may be proper and necessary*' for its mining and removal. And it granted a right of way to remove 'through said described premises *other coal* belonging to the [grantee] . . . *its successors and assigns or which may thereafter be acquired.*' (Italics supplied) [by court].

379 Pa. at 369, 108 A.2d at 909.

And furthermore:

Contrary to the contention of [grantor's assignee], [the right to remove other coal belonging to grantee, its successors and assigns or which may hereafter be acquired] was not restricted to [grantee's] holdings, but intended to include any coal owned by its transferees at such time as the right of way should be used. . . . *This right was exclusive or independent of [the] right to the [grantor's] coal, and necessarily must be taken to give the right to remove the coal owned at any time by [the grantee] and owned at any time by any of its transferees.*

379 Pa. at 372, 108 A.2d 910. (emphasis added).

■ *Kormuth* is supported by cases stating that a grantor's conveyance of the right to use the surface of his land to transport other coal owned by the grantee is entirely separable from any accompanying grant to mine the coal under the

tract itself.[4] See *e. g. Westerman v. Penna. Salt Mfg. Co.*, 260 Pa. 140, 103 A. 539 (1918); *Stewart v. Northwestern C. & I. Co.*, 147 Pa. 612, 23 A. 882 (1892). In *Robinson v. Stover*, 320 Pa. 308, 312, 182 A. 145, 146 (1936), the Court stated:

> When . . . the owner of lands grants the right to another to remove minerals beneath the surface thereof, ordinarily he receives "rents or royalties"; when he permits minerals from adjoining lands to be transported over the surface of his own lands, he receives "wheelage" for the privilege granted. The consideration in the first instance is the marketing of his minerals, but in the latter case, as he has no interest in the removal of such foreign minerals, the consideration is the hindrance to his full enjoyment of the surface of his lands.

*See Hindman v. Farren*, 353 Pa. 33, 44 A.2d 241 (1945).

Moreover, *Kormuth* and the cases that support it are consistent with cases in other jurisdictions. *See Mines— Transporting From Other Tract*, 83 A.L.R.2d 665 (1962). A particularly helpful case from another jurisdiction is *Groves v. Terrace Mining Company*, 340 S.W.2d 708 (Mo.1960). There, the owner of a tract entered into a lease under the terms of which the lessee was given the right to mine the tract and transport other ores owned by him across the tract. The lessor subsequently sold the property to a third party. In the deed, the lessor–grantor reserved for himself the mineral rights to the property, but did not explicitly

---

**4.** Several Pennsylvania cases suggest that where a party is granted the right to mine coal under a property it also has an implicit if not explicit right to move other coal owned by it through the passageways under the property while the coal is being mined. *Webber v. Vogel*, 189 Pa. 156, 42 A. 4 (1899); *Lillibridge v. Coal Co.*, 143 Pa. 293, 22 A. 1035 (1891) (limited by *Webber*). The cases reason that since a grantee owns the coal, and in essence the space occupied by that coal while it is being mined, he may use that space as he wishes as it becomes available. *Lillibridge v. Coal Co., supra*. The grantee loses this right once the mine is exhausted or abandoned. *Webber v. Vogel, supra*. This reasoning is not applicable to the transportation on the surface of other coal owned by the grantee. Any additional use of the surface beyond that needed to mine the coal under the land itself imposes an encumbrance that will not be implied unless explicitly made a part of the agreement between the parties. *Mines—Transporting From Other Tract, supra*.

reserve the right to transport either his or his lessee's *other* minerals or ores across the surface of the tract. The question arose as to whether the lessor–grantor or the grantee was to receive the monies paid by the lessee for the right to transport its other ores across the surface of the tract. The court held in favor of the grantee, reasoning that since the lessor–grantor had not explicitly reserved the "wheelage" rights to the property, the grantee was entitled to them.

■ Here, since Eulala McClure's 1955 deed granted River Valley *joint* mining and "wheelage" rights, as well as *exclusive* timber rights on the tract, the grant and reservation clauses of the deed were valid. Appellant and appellee are therefore joint owners of the coal and other minerals under the tract, unless either party can show by extrinsic evidence, not previously before the lower court, that it is the sole owner of the rights. We shall allow such a showing to be made, if it can be, because neither party advanced the claim here or below that it was a joint owner of the rights.

Reversed and remanded with instructions to enter a judgment consistent with this opinion, without prejudice, however, to the right of either party to submit to the lower court extrinsic evidence that it is sole owner of the rights in question. After such such submission, and the lower court's order thereon, either party may take a new appeal.