# Boteler et al. *v.* Philadelphia & Reading Terminal R. R., Appellant.

*Railroads—Eminent domain — Damages—Leasehold—Statement—Covenants—Notice—Evidence—Competency of witness.*

In proceedings against a railroad company to recover damages for the taking of a leasehold estate, where the use of the property leased was limited by the terms of the lease for lodge rooms, witnesses who testify that they have been connected for several years with the business of renting out lodge rooms, and know what localities are most desirable in which to establish halls to rent to lodges, are competent to testify as to the value of the leasehold.

A clause in a lease provided that if the demised premises should be taken by a railroad company, the lease should thereupon terminate, but that nothing therein contained should " prevent the lessor or lessees from recovering damages for such taking from the corporations or other persons taking." The tenants sublet the premises to other persons who had no knowledge of the contents of the lease between the owner and the tenants. *Held*, that the sub-tenants could recover the value of their leasehold from the railroad company.

It seems that where the lessees of a property are restricted by the terms of the lease to a particular use, the value of the property for other uses cannot be considered in condemnation proceedings to ascertain the value of the leasehold.

Argued March 22, 1894. Appeal, No. 218, Jan. T., 1894, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept T., 1891, No. 539, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Appeal from jury of view.

At the trial it appeared that plaintiffs were five persons named in a sub-lease dated Oct. 24, 1889, made by Kline & Keys, for part of the premises No. 1128 Arch street, that is, for all of the premises except the two rooms on the first floor front and toilet-room in the rear, for the term of three years and six

months from Nov. 1, 1889, at a rent of $1,200 per annum. The lease provided that the lessee should not occupy nor permit to be occupied the demised premises otherwise than as lodge-rooms for Hall Association O. U. F., nor should the lessee assign the term or underlet the premises without the written consent of the lessors.

Kline & Keys were themselves lessees of the owner of the premises under agreement of June 1, 1888, whereby they acquired a term of five years from the date thereof at a yearly rent of $1,800 per annum. Their lease contained the following provision :

"Fifth. Whereas there are rumors that a certain railroad is to be constructed in the vicinity of the property hereby demised, the location of which cannot now be ascertained with any certainty, therefore it is hereby expressly understood and agreed, by and between the parties to this lease, that, in case such a railroad is or shall be located over the hereby demised premises or any part thereof, then and in that case this lease and the covenants thereof shall terminate and end immediately upon said premises being taken for railroad purposes, either by entry thereon on the part of the corporation or other person or persons taking, or by their making or receiving compensation for such taking. And upon such termination the said lessees shall, within a reasonable time, vacate the said premises and deliver up the possession thereof to the lessor, the rent to be apportioned to the time of such vacation. Nothing herein contained shall, however, prevent the lessor or lessees from recovering damages for such taking from the corporations or other persons taking."

When John J. Jack, one of the plaintiffs, was on the stand, he was asked : " Q. What knowledge or experience have you had in the leasing of buildings and fixing them up for halls and subletting them to other people ? A. I have been in the business for about six years and over. Q. What personal experience had you had as one of these trustees or committee personally as to any particular hall ? A. I had three years' experience in Chestnut street above Twelfth, where we leased a hall and also fitted up and rented it out to tenants. Q. Have you a knowledge of the fitting up of other halls and letting them out to tenants ? A. Yes, sir. Q. How many ? A. I have a knowl-

edge of the hall fitted up on Broad street above Ellsworth, occupied by Post No. 127, I think it is. Q. Subletted? A. Yes, sir. Q. Do you know anything about the matter of profit in subletting in each of those cases? A. Yes, sir. Q. Do you know whether or not there was a profit? A. I know they realized profit on the hall. I know the hall on Twelfth street above Race, rented for the same purpose by the American Legion of Honor, organized by an association the same as ours, realized a profit and declares dividends."

On cross-examination the witness testified: " Q. You have no knowledge of the general rental value of property on Arch street between Eleventh and Twelfth as dwelling houses? A. No, sir. Q. For any purpose? A. For any purpose. Q. What I want to get at is, that your experience is confined to the instance in which you were acting for a hall association or for lodges of some kind, for renting empty rooms at the places designated, and having fitted them up for lodge rooms, and having rented the lodge rooms out by the night or the month to lodgers or other people who would apply for them, and in which cases there was what you call a profit? A. Yes, sir. Q. That is your experience? A. Yes, sir. Q. That is all the experience you have on that subject? A. On that subject; yes, sir."

Plaintiff's counsel then asked the witness: Q. " From your knowledge on this subject of the renting of halls and renting of buildings and fixing them into halls, do you think you are competent to say what the market value, or fair, reasonable value of that leasehold interest was at the time that you went out?"

Objected to because the witness has already stated with great particularity upon cross-examination just exactly what his means of information and what his experience is, and that cross-examination shows he has no general experience and information upon the only material subject of inquiry, which is the general rental value of properties on Arch street. Objection overruled and exception.] [1]

The witness answered in the affirmative.

The same witness was asked: " [Q. What, in your judgment, was it worth, based on your knowledge? Objected to. Objection overruled. Exception for defendant. A. In my judg-

ment that lease was worth to us to the end of our term $2,200. Q. What, in your judgment, would it have been worth to anybody else who had knowledge of all the facts of the case? Objected to, objection overruled, and exception. A. Worth the same.]" [2]

Upon further cross-examination the witness said: " Q. And the reason you said it was worth to you $2,200 was because you had made a calculation, the details of which we need not go into, showing the system of furnishing this hall as you said you did, by the night per week or by the night per month, and paying all the expenses yourself, that the net result was a certain profit to you or to your Hall Association, which you have calculated to be $2,200 for the twenty-two months; that is so? A. At the time the railroad company took possession of the hall we were clearing $100 a month clear profit. Q. And the reason you said it was worth to you $2,200 was because $100 a month, which was the balance that came to you arising out of this method of procedure, for twenty-two months would be $2,200? A. Yes, sir."

William H. Ivins, who was the treasurer of the Hall Association, said he had experience in the leasing of properties and fitting them up for hall purposes and re-letting them. He was asked: " [Q. Do you think you are competent to say to the jury what the value of the leasehold interest was over and above what was paid for it? Objected to, objection overruled and exception. A. I think so.] " [3]

The same witness was asked: " [Q. Knowing all the circumstances of the case, the number of tenants, those you had in prospect, or any other thing that would properly.lead you to a conclusion, how much, in your judgment, was that leasehold interest worth? Objected to, objection overruled and exception. A. $2,200.] " [4]

On cross-examination this witness testified substantially as the preceding witness.

The court charged in part as follows: " Mr. Jack and Mr. Ivins have testified that this lease as a lease was worth, at the time the railroad took possession of the property, $2,200; that it was worth that for the purpose of sale or assignment to another person. On the part of the defence, Mr. Boyd, Mr. Sylvester, and Mr. Dilkes testified that the lease was worth no

more than the rent reserved; that is, that it had no value for the purpose of sale or assignment to another person.

" [That testimony is before you, gentlemen. It has been very thoroughly discussed by the learned counsel in the case. You will use it for what you consider it is worth, and in considering it you will also exercise your own judgment and your own knowledge derived from observation and experience in life. This is the only light that has been thrown upon the subject by the testimony.] [6]

" Had the lease of the plaintiffs a value above the rent paid; that is, a value as a lease with its restrictions, distinct and apart from the profits of the business? If it had such a value the amount of that value is the measure of the damages in this case, and for that your verdict should be for the plaintiffs. If it had no value the plaintiffs lost nothing by the destruction of the property."

Defendant's points were among others as follows :

" 1. The plaintiffs in this case are lessees named in an indenture dated October 24, 1889, between Kline & Keys and themselves, for a part of the building No. 1128 Arch street, and it appears from the evidence that Kline & Keys were themselves lessees of the whole building under an indenture made June 1, 1888, between Anna H. Wilstach, the owner of the premises, and the said Kline & Keys. The said lease of Kline & Keys contained the following provision [quoting clause 5 of the lease]. The jury is instructed that the estate of the sublessees could not endure longer than that of the original lessees, and that the fifth provision of the latter's lease, above stated, was operative as well to terminate the estate of the sublessees as the estate of the original lessees." Reserved.

" 2. The evidence in this case shows that the railroad company duly resolved to exercise its powers of eminent domain in March, 1891, and that in pursuance thereof it gave a bond to the plaintiffs to secure any damages which they might have in June, 1891, but that possession was not actually taken until about July 1, 1891. The jury is therefore instructed that at the time possession was taken the plaintiffs were not in the possession of an unexpired term running until June 1, 1893, but that in point of fact, in view of the provision in the lease of Kline & Keys aforesaid, and of the exercise of the powers

of the railroad company, the lease of the plaintiffs had thereby terminated with the same force and effect as if by limitation, and that there was, therefore, in point of fact, no term of the plaintiffs taken by the railroad company." Reserved.

"7. There is no sufficient evidence in this case that the estate for years of the plaintiffs under the lease to them was, at the time possession was taken, of any marketable value whatever, and the plaintiffs cannot therefore recover any damages therefor." Refused. [5]

"8. The eighth provision of the lease of October 24, 1889, provides that all improvements made by the said lessees are to remain on said premises, and become the property of said lessors after the termination of the lease. As the title of the lessees was determined under the provision of the lease to them of June 1, 1888, in June, 1891, the lease to the plaintiffs likewise terminated, and the provision with respect to improvements above referred to was just as operative as if the lease had expired by limitation." Reserved.

Verdict for plaintiff for $1,665. The court subsequently entered judgment for plaintiff on the points reserved. Defendants appealed.

*Errors assigned* were (1–4) rulings on evidence ; (5, 6) instructions as above ; (7) entry of judgment on points reserved ; quoting bills of exception and evidence as in brackets, instructions and points reserved.

*Thomas Hart, Jr.*, for appellant.—Plaintiffs' witnesses were incompetent: Ry. v. Vance, 115 Pa. 332 ; Gorgas v. R. R., 28 W. N. 436 ; McElheny v. Bridge Co., 153 Pa. 108 ; Michael v. Pipe Line Co., 159 Pa. 99.

There was no evidence in the testimony of the two witnesses, Jack and Ivins, which alone would justify the inference that plaintiffs' sublease had any market value whatever : Express Co. v. Wile, 64 Pa. 201 ; Newhard v. R. R., 153 Pa. 417 ; Carroll v. R. R., 12 W. N. 348 ; R. R. v. Bell, 122 Pa. 58 ; Marland v. R. R., 123 Pa. 487 ; Hauser v. R. R., 147 Pa. 440.

As to measure of damages in cases of tenants, see Dyer v. Wightman, 66 Pa. 425 ; R. R. v. Eby, 107 Pa. 166 ; Searle v. R. R., 33 Pa. 65 ; R. R. v. Heister, 40 Pa. 55 ; Ry. v. Vance,

115 Pa. 325; R. R. v. Cleary, 125 Pa. 452; R. R. v. Getz, 113 Pa. 214; Fairman v. Fluck, 5 Watts, 516; Thoburn v. Nav. Co., 7 S. & R. 411; Prescott v. Otterstatter, 79 Pa. 462.

Damages in condemnation cases are to be estimated without reference to the person of the owner or the actual state of his business, and the jury cannot consider any supposed loss of profits to plaintiff in his business: R. R. v. Robinson, 95 Pa. 426; Phila. v. Linnard, 97 Pa. 242; Finn v. Gas & Water Co., 99 Pa. 631; R. R. v. Patterson, 107 Pa. 461; Harvey v. R. R., 47 Pa. 434; Furman Street, 17 Wend. 649; R. R. v. Braham, 79 Pa. 447; Nav. Co. v. Farr, 4 W. & S. 375.

The effect of the fifth provision in the lease from Wilstach to Kline & Keys, was to wholly determine Kline & Keys' estate upon the happening of the contingency therein provided, that is, upon the condemnation of the leased premises by the railroad company: Doty v. Burdick, 83 Ill. 474; Elms v. Randall, 4 Dana (Ky.) 519; Eten v. Luyster, 60 N. Y. 252; Jackson & Gross, L. & T. §§ 29, 519; Roe v. Wiggs, 5 B. & P. 330; Foa on Landlord and Tenant (London, 1891), pp. 115, 327; Wilson v. Hart, L. R. 1 Ch. Ap. 463; Feilden v. Slater, L. R. 7 Eq. 523; Tritton v. Bankart, 56 L. T. R. 306; Lafferty v. R. R., 23 W. N. 334; Davis v. R. R., 114 Pa. 308.

*Thad. L. Vanderslice*, for appellees.—The lease ended whenever the premises were taken for railroad purposes, but the railroad could not enter until they had paid or secured the damages. Even the location of March, 1891, deprived the tenants of no right or dominion over the estate: Gilmore v. R. R., 104 Pa. 281.

But whatever the contract was between lessor and lessee, the railroad company was a stranger, it was neither party nor privy. It was not the vendee of the fee that was in Mrs. Wilstach. It was not the assignee of either of the lessors. It simply had the right to take such property as was necessary for railroad purposes.

If plaintiffs had a right to recover damages, of course the measure of that damage was the value of the leasehold interest above the rent paid by plaintiffs: Kersey v. R. R., 133 Pa. 240.

The testimony in this case as to the value of the lease was clear, distinct and positive. Plaintiff's witnesses, Jack and

Ivins, it is true did not pretend to know the rental value of houses and stores on Arch street in 1891. Such properties were not the subject of inquiry at all. The inquiry was as to the rental value of halls used for lodge purposes.

OPINION BY MR. JUSTICE McCOLLUM, Oct. 22, 1894:

The Philadelphia & Reading Terminal Railroad Company appropriated, in the exercise of its right of eminent domain, the plaintiffs' leasehold interest in a part of the property, No. 1128 Arch street, Philadelphia, and this proceeding was instituted to recover the value of that interest. As it was a case, not of injury to but of destruction of the leasehold, the value of the latter was the true measure of the damages recoverable, and so the learned judge of the court below instructed the jury. It is conceded by the defendant company that the instructions on this point were unobjectionable. But it contends that the verdict should have been in its favor on the ground that there was no competent evidence in the case by which the value of the leasehold could be ascertained. This contention requires us to consider whether Ivins and Jack were competent to testify to the value of the plaintiffs' interest in the property. In considering this question it should be borne in mind that the property was leased and fitted for a particular use. The plaintiffs' rights in it were defined by their lease, and neither they nor a purchaser of the leasehold from them could use it for any other purpose than that for which it was let. It may not be important to determine in this case whether the value of the property for other uses than that to which the lessees were restricted by the terms of the lease can be taken into consideration in ascertaining the value of the leasehold, but it seems to the writer that it should not be. It is quite clear however that the persons who are best informed in regard to leaseholds of this character are usually best qualified to speak of their value. Ivins and Jack had been for several years connected and familiar with the business for which the property in question was leased. They knew what localities were most desirable in which to establish halls to rent to lodges, and what the demands for them were. In view of their experience in renting and fitting buildings and letting rooms therein for lodge purposes, and of their knowledge of like transactions by others, we think they were competent to testify to the value of this leasehold.

We do not regard the fifth provision in the lease from Wilstach to Kline & Keys as a bar to, or in any degree qualifying the plaintiffs' claim in this action. It was a provision in a lease between the owners of the property and the plaintiffs' lessors, but the plaintiffs were without actual notice of its existence, and it was expressly provided therein that the rights of neither party should be affected by it in a suit for damages sustained by an appropriation of the property to which it referred.

We think the case was tried in the court below upon correct principles and that the rights of the litigants were carefully guarded by the instructions and the rulings upon offers of evidence.

The specifications of error are overruled.

Judgment affirmed.