In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Highways, of Right of Way for Legislative Route 1094, Section 2R/W, a Limited Access Highway in Conewango and Pleasant Townships and the Borough of Warren. Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued October 29, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Benjamin B. Wechsler,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant.

*John E. Eberly,* with him *Harper, Clinger & Eberly,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 17, 1976:

In this eminent domain case, the Commonwealth of Pennsylvania, Department of Transportation (Penn-DOT) appeals from an order of the Court of Common Pleas[1] denying its motion for a new trial.

PennDOT, for highway purposes, condemned 26.83 acres of a 76.34 acre tract owned by the Borough of Warren (Borough), Warren County.

The subject premises were conveyed to Borough in 1934 by deed which, by a restriction, required Borough to use it for the purpose of establishing and maintaining public parks and recreation facilities, a municipal air-

---

1. Thirty-Seventh Judicial District, Warren County Branch, order dated May 22, 1975, No. 76, February Term, 1970.

port, and for such other purposes for which Borough could lawfully hold real property. Included was a reversionary interest in grantor's successors and assigns if Borough failed to comply with the terms of the restrictive covenant.

In 1936, Borough commenced operation of a municipal airport on the land. Condemnation halted that use and Borough then used it as a public park, its adjacent property having been used for that purpose. All the property, including the subject of this litigation, is zoned industrial.

On petition of Borough, a board of viewers, in due course, awarded $85,000.00 damages for the taking. No severance damages were awarded. Borough appealed from this award and demanded a jury trial. The jury favored Borough with a verdict of $275,000.00, whereupon PennDOT filed a motion for a new trial. The motion was denied and this appeal followed.

At trial, Messrs. Harry E. Mueller, Jr., and Robert S. Johnson, noting their awareness of the restriction, testified as appraisal witnesses for Borough. Mr. Mueller testified that the highest and best use of the property prior to the taking was as an airport facility. His fair market value estimate was based on comparable sales of industrial property in the vicinity. He testified that the fair market value prior to the taking was $996,000.00 and that the highest and best use of the property after the condemnation was as a Borough park or non-profit industrial park. His estimate of fair market value of the land after the partial taking, and as affected thereby, was $491,000.00. It was his opinion that the restriction would not affect his "before-taking" valuation but that it would have reduced his "after-taking" valuation estimate had he considered it. Mr. Mueller reasoned that the restriction had no bearing on his "before-taking" value because the highest and best use of the property prior to the taking was as an airport rather than industrial, thus

making the restriction irrelevant. Industrial comparables were considered because that use more closely fit airport use.

Mr. Johnson, for Borough, concurred in Mr. Mueller's opinion that the highest and best use of the land prior to the taking was as an airport. He estimated that the fair market value before the taking was $1,120,323.00. He also considered comparable sales of industrial property after making adjustments for location, sewage, and utility service. He testified that the highest and best use of the remaining land after the taking was recreational. In arriving at his after-taking value of $470,345.00 by using the industrial comparables, Mr. Johnson made an additional adjustment for the deed restriction because, in his opinion, the land as restricted loses the higher value of unrestricted industrial property.

Two issues are presented to us for determination. First, whether the deed's restriction on the use of Borough's land should be considered in arriving at its fair market value. Second, whether industrial comparables are competent evidence of the value of condemned land where the highest and best use of the land is recreational.

Our scope of review on appeal from the denial of a motion for new trial is limited to determining whether the court below manifestly abused its discretion or committed a clear error of law. *Dept. of Transportation v. Lutz*, 14 Pa. Commonwealth Ct. 448, 322 A. 2d 800 (1974); *Arndt v. Central Cambria School District*, 7 Pa. Commonwealth Ct. 150, 298 A. 2d 682 (1972).

What effect a restrictive covenant has upon the fair market value of condemned property is a question of first impression in this Commonwealth. Reviewing the authority, we start by referring to the case of *Boteler v. Philadelphia and Reading Terminal R.R.*, 164 Pa. 397, 30 A. 303 (1894). There, a railroad condemned property which was occupied by a sub-lessee whose use was re-

stricted to the rental of lodge rooms. In valuing the lease-
hold interest, the court said:

> "The plaintiff's rights in it were defined by their
> lease, and neither they nor a purchaser of the lease-
> hold from them could use it for any other purpose
> than that for which it was let. It may not be impor-
> tant to determine in this case whether the value of
> the property for other uses than that to which the
> lessees were restricted by the terms of the lease can
> be taken into consideration in ascertaining the value
> of the leasehold, but it seems to the writer that it
> should not be." 164 Pa. at 404, 30 A. at 303.

In *Land in Millcreek Twp.—Airport Purposes,* 24 Erie
L.J. 237 (1941), lands were condemned by the City of
Erie for airport purposes. The condemnee's deed con-
tained a restrictive covenant specifically prohibiting use
of the land for airport purposes. Grantor's assignee
argued that the owner-condemnee cannot obtain condem-
nation damages when the condemnation was for a pro-
hibited use. There, it was held that the owner's damages
should be based upon the value of the property for the
use to which it was then adopted, namely, general busi-
ness purposes. Speaking of the owner's rights, the court
stated:

> "He has breached no covenant and is entitled to dam-
> ages for the taking of his property, based on its value
> for the purposes for which he was entitled to use it."
> 24 Erie L.J. at 239.

The narrow issue in *Boteler* was what value to place
on the leasehold interest of a sub-lessee, rather than what
was the value of the land *qua* land. In *Land in Millcreek
Township,* the interests of the parties were different, *i.e.,*
the controversy was between the holder of the reversion-
ary interest and the condemnee. In determining whether
the condemnee was entitled to any damages, the court in
*Land in Millcreek Township* concluded that, notwith-
standing the fact that the condemnor's proposed use was

prohibited to condemnee, the condemnee held an interest to be satisfied by just compensation.

It appears to us from an exhaustive review of the writings on the subject that the majority view in the United States where property is held subject to a restriction limiting its use to specific charitable, religious, education, or non-commercial purposes is that the property may be given a value as if it were *un*restricted. *See* 4 Nichols on Eminent Domain, §12.321 (1964); Orgel, Valuation Under Eminent Domain, §41 (1953).

The leading case is *Board of County Commissioners v. Thormyer*, 169 Ohio St. 291, 159 N.E. 2d 612 (1959), where land owned by the county and used as a children's home was condemned for highway purposes. The land had originally been conveyed to the county in trust to maintain a home for poor children. A reversionary interest in grantor's heirs was provided in the event that the land should no longer be used for the children's home. After carefully examining the authorities in the United States and England, the court arrived at three alternative conclusions: First, ignore the restriction in arriving at fair market value. Second, give full consideration to the restriction. Third, give consideration to the restriction but also consider the probability that it may be removed by litigation or legislative action. The effect of the first is that the condemnee may get more compensation than the property is worth to him, but the condemnor pays no more than the property is *actually* worth. The effect of the second result is that the condemnor gets a windfall since it acquires the land for less money than it would pay for the same land absent the restriction. The third alternative was discarded by the court because it was impractical due to the wide range of speculation involved.[2] *Thormyer* accepted the first alterna-

---

2. *Accord*, E. Snitzer, Pennsylvania Eminent Domain, §603 (2)- 7.2 (1965).

tive for the following reasons: First, property's worth is to be based on any suitable use, including the most valuable uses to which it can lawfully, reasonably, and practically be adopted.[3] Second, as between the condemnor and condemnee, the condemnee should obtain a windfall because the condemnor controls timing and location of the subject of the taking and also because condemnee is never really fully compensated considering the various non-compensable losses.[4] Furthermore, the condemnor, in reality, is paying no more than the land is worth. Third, it is unrealistic to conclude that a grantor would have wanted the property to be acquired by then unforeseen condemnation proceedings for less than its actual value, to the detriment of the object of his bounty.

In *Town of Winchester v. Cox*, 129 Conn. 106, 26 A. 2d 592 (1942), property owned by the town was condemned for highway purposes. It had been conveyed to the town with the restriction that it be forever maintained as a public park. The court held that:

> "Certainly equity cannot be done to the town and to those for whose benefit it holds the lands unless it receives the equivalent of their value apart from the restriction. . . ." 129 Conn. at 116, 26 A. 2d at 597.

We adopt the principles in *Thormyer* and *Town of Winchester* as the law of eminent domain in Pennsylvania. Accordingly, we hold that private restrictions im-

---

3. *Accord*, Section 603 of Pennsylvania's Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, 26 P.S. §1-603, which provides:

> "Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, but not limited to, the following factors:
>
> . . . .
>
> "(2) The *highest and best reasonably available use of the property and its value for such use* . . . ." (Emphasis added.)

4. *See* Leary and Turner, The Injustices of "Just Compensation" To Fixed Income Recipients—Does Recent Relocation Legislation Fill the Void? 48 Temp. L.Q. 1 (1974).

posed on the use of lands need not be considered in arriving at a fair market value of the land in condemnation proceedings. This being so, the court below did not abuse its discretion nor did it commit an error of law in permitting Borough's real estate appraiser to testify that he did not consider the effect of the restriction in arriving at his estimate of the fair market value of Borough's land.

PennDOT next contends that it was error for the court below to permit a witness who testified that the highest and best use of the property after the taking was *recreational* to then establish a value based upon sales of industrial comparables.

Section 705 of the Eminent Domain Code, 26 P.S. §1-705, provides:

"Whether at the hearing before the viewers, or at the trial in court on appeal:

. . . . .

"(2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following:

"(i) The price and other terms of any sale or contract to sell the condemned property or comparable property made within a reasonable time before or after the date of condemnation."

The term "comparable" is not defined in Section 705, it being within the discretion of the trial judge to determine whether sales are "judicially comparable" and thus admissible as evidence of the market value of condemned property. *Arndt v. Central Cambria School District,* 7 Pa. Commonwealth Ct. 150, 298 A. 2d 682 (1972). Trial courts must therefore decide, on a case-by-case basis, whether portions of evidence are probative and relevant. *Commonwealth v. Fox,* 16 Pa. Commonwealth Ct. 23,

328 A. 2d 872 (1974). To agree with PennDOT's contention would require us to hold that property may not be valued at the highest and best use unless there are comparable sales of property at the identical use. The proof of a highest and best use only requires a showing that the land is physically adaptable to that use and that there is a need for that use in the area as reflected in the property's market at the time of condemnation. *Stoner v. Metropolitan Edison Co.*, 439 Pa. 333, 266 A. 2d 718 (1970). Mr. Johnson, as we have noted, adjusted his comparable sales data to include location, sewage, utility service, etc. He also made an additional adjustment for the deed restriction. The trial court did not abuse its discretion in admitting Mr. Johnson's valuation testimony. We therefore affirm.