555 A.2d 1330

**Bonnie L. GIOIA, Appellant**

**v.**

**Bernard J. GIOIA.**

Superior Court of Pennsylvania.

Submitted Dec. 12, 1988.

Filed March 15, 1989.

540

Jan Ira Medoff, Pittsburgh, for appellant.

Ernest P. DeHaas, III, Uniontown, for appellee.

Before MELINSON, HOFFMAN and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from a final order entered July 8, 1988 in the Court of Common Pleas of Fayette County, Civil Division. The order provided for the equitable distribution of the parties' marital property pursuant to a special master's recommendations. For the following reasons we affirm in part and reverse in part the court's order, and remand for further proceedings consistent with this opinion.

The parties to the instant appeal were married in 1971. There are two children of the marriage who reside with wife/appellant. On February 26, 1980, appellant filed an action in divorce alleging both fault and no-fault grounds. The Fayette County Court of Common Pleas bifurcated the divorce from the economic issues, and entered a decree of divorce on August 29, 1985. Eventually a special master was appointed, who conducted hearings regarding the economic issues on August 17, August 31, and November 9 of 1987. The master filed his report on January 6, 1988 and appellant timely filed exceptions. The lower court issued its opinion and order granting certain exceptions and denying others on July 8, 1988. This timely appeal followed.

Appellant asks us to consider the following issues: (1) whether the lower court erred in its selection of a valuation date for husband/appellee's business interest; (2) whether the lower court erred in reducing the net value of appellee's assets by the amount of a judgment levied against a predecessor entity to the closely held corporation in which appellee currently owns 50% of the stock; (3) whether the lower court erred in failing to assign a monetary value to a mineral lease held as an asset by the business entity in which appellee owned a 50% interest on the relevant date; (4) whether the lower court inappropriately apportioned the marital assets pursuant to the relevant factors in the Penn-

sylvania Divorce Code;[1] (5) whether the lower court improperly refused to grant counsel fees in the amount requested by wife/appellant; (6) whether appellant was improperly denied discovery; and finally, (7) whether the special master erred in refusing to admit into evidence the valuation report prepared by appellant's expert regarding appellee's business interest. We will consider these issues *seriatim.*

Initially, we note that the trial court has "full equity power" to resolve issues concerned with equitable distribution of marital property pursuant to section 401(c) of the Divorce Code, *supra.*[2] Our appellate role is not to nullify the fact-finding function of either the special master or the lower court. *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984). We review judgments and orders pertaining to equitable distribution of marital property under an abuse of discretion standard. *Cunningham v. Cunningham,* 378 Pa.Super. 280, 548 A.2d 611 (1988). We will not disturb the decision of the trial court absent abuse of discretion. *Vajda v. Vajda,* 337 Pa.Super. 573, 579–560, 487 A.2d 409, 412 (1985). We will, however, find an abuse of discretion where the trial court has misapplied the law. *Buckl v. Buckl,* 373 Pa.Super. 521, 526, 542 A.2d 65, 67 (1988) (*en banc*).

■ We begin our analysis with a consideration of appellant's allegation that the selection of December 31, 1986 as the valuation date for appellee's business interest was an abuse of discretion under the circumstances of the instant case. Appellant argues that the date of separation, November 29, 1981, is the most appropriate valuation date. We cannot agree. Our Supreme Court has recently stated that

1. 23 Pa.S.A. §§ 101–801.

2. Section 401(c) of Title 23 provides in pertinent part that the lower court has "full equity power and jurisdiction" to issue injunctions or other orders necessary to protect the interests of the parties and to facilitate the purposes of the Divorce Code. The lower court is empowered to grant any relief or remedy required by the interests of equity and justice in all matrimonial causes. *See Cheng v. Cheng,* 347 Pa.Super. 515, 500 A.2d 1175 (1985) (explicating court's powers to effectuate "economic justice" between the parties in a divorce proceeding).

marital property must be distributed with reference to its value as close as is practicable to the date of distribution. *Sutliff v. Sutliff,* 518 Pa. 378, 383, 543 A.2d 534, 537 (1988). As the court explained,

[T]here may be situations where marital assets have, been consumed or disposed of by one of the parties, thus rendering a current valuation impossible and making it necessary to rely on data that would otherwise be considered stale.... In the usual case, however, given that the parties' present needs and circumstances are to be a major factor in distributing marital assets, it would be impossible to construct a distribution scheme that would be fully responsive to those needs and circumstances if the court were to act without taking cognizance of the current values of the assets being distributed.

. . . .

If, as has been suggested, marital property values were to be fixed as of the date of the parties' separation, or as of the date of filing a complaint in divorce, severe injustices would at times be inflicted upon the parties concerned.

*Id.,* 518 Pa. at 383–85, 543 A.2d 536–537 (citations omitted).

Our inspection of the record has disclosed no indication that the valuation date was selected in order to unfairly favor one party over the other. The special master conducted the first two fact-finding hearings in August of 1987. December 31, 1986 was the most recent date for which complete financial data, including year-end statements, were available for appellee's business interests. In light of this fact, we cannot conclude that it was unreasonable for the master to choose December 31, 1986 as the valuation date. Nor can we find that the lower court abused its discretion in following the master's recommendation on the selection of a valuation date. We therefore uphold the action of the trial court in this regard.

The next two issues for our review concern the effect of a judgment against Gioia Coal Company on the value of appellee's interest in G & B Coal, Inc. and whether the

lower court erred in failing to assign a monetary value to a leasehold interest held as an asset by the partnership. As an *en banc* panel of this court recently noted, "[w]hile the general principle that an interest in a partnership is marital property presents no particular difficulty, the valuation of such interest is fraught with problems." *Buckl v. Buckl,* *supra* 373 Pa.Super. at 527, 542 A.2d at 67. Our inspection of the record indicates that in 1981, appellee and his brother founded the Gioia Coal Company (hereinafter "the partnership")[3] as an equal partnership to which appellee contributed $40,000 in marital property. Appellee thus owned a 50% interest in the partnership which was at least partially purchased with marital assets.

■ At the beginning of January, 1987, the assets of this partnership were transferred to G & B Coal, Inc. (hereinafter "the corporation"). Appellee owns 50% of the capital stock in this corporate successor to the original partnership. The trial court properly held that appellee's interest in both the partnership and in its corporate successor was marital property subject to equitable distribution. *See Buckl v. Buckl, supra;* and *McCabe v. McCabe,* 374 Pa.Super. 451, 543 A.2d 558 (1988) (holding value of partnership interest was marital property subject to equitable distribution in a divorce proceeding). *See also Sutliff v. Sutliff,* 361 Pa.Super. 504, 522 A.2d 1144 (1987) (permitting tracing of marital assets), *rev'd* on other grounds, 518 Pa. 378, 543 A.2d 534 (1988).

The business of both the partnership and the corporation was the same: the mining of coal. To that end, in 1981 the partnership entered into an agreement with Mt. Thor Minerals, Inc. (hereinafter "Mt. Thor"). Following a dispute with

3. We note that the trial court, in its opinion dated July 8, 1988, has inadvertently confused the names of the two business entities in which appellee holds or has held an interest. This does not affect our ability to render a decision regarding the instant appeal, however. It is settled law that we may conduct an independent review of the record before us, and where appropriate, may affirm the decision of the trial court on grounds other than those relied upon by the court itself. *Damiano v. Damiano,* 378 Pa.Super. 106, 109–110, 548 A.2d 298, 300 (1988).

the partnership, Mt. Thor filed suit in the Court of Common Pleas of Westmoreland County and obtained a judgment in the amount of $163,304.05 against Bernard J. Gioia and Gary A. Gioia, trading and doing business as Gioia Coal Company. This judgment was entered in Westmoreland County in mid-December, 1986 but was not entered in Fayette County until January 16, 1987. On January 1, 1987, after the initial entry of judgment in its favor, but before Mt. Thor had levied against Gioia Coal Company, all the partnership assets were transferred into the new corporate entity, G & B Coal, Inc.

In his report and recommendation, the special master found that the fair market value of the partnership was $21,913.95 and that appellee's one-half share of this was $10,956.98. The special master arrived at this figure by adopting a net asset value of $185,218.00 for the business as of December 31, 1986 and reducing this amount by the $163,304.05 judgment in favor of Mt. Thor. The lower court adopted the master's findings and recommendations as to valuation of appellee's business interest in the partnership, and by implication, in the corporation.

Appellant argues that the special master has improperly valued husband's business interest in the corporate successor to the partnership. Appellant contends that it was abuse of discretion to reduce the net value of the *corporation* by the amount of a liability pertinent to the *partnership*, particularly where the liability was not carried on the partnership's books or reflected in the pertinent year-end statement. Further, appellant asks us to consider the fact that the judgment entered against the partnership may well be uncollectible because the partnership assets were transferred to the corporation before Mt. Thor could levy. We find appellant's arguments to be unpersuasive.

As the lower court correctly stated, the task before it was to set a value on husband's business interests as of a particular date so that equitable distribution of the marital property could be effectuated. Our inspection of the record indicates that on the date chosen for valuation, December

31, 1986, no assets which could be characterized as "marital property" had been transferred from the partnership to the corporation. Therefore, our only relevant inquiry concerns the value of appellee's interest in the partnership.

We agree with the reasoning of the lower court that a judgment entered against a partnership before the dissolution of that partnership is a liability which must be considered when establishing a fair market value for the business entity. This is so whether or not the judgment was ever carried on the partnership books or financial statements. *See Buckl v. Buckl, supra* 373 Pa.Super. at 532, 542 A.2d at 70 (liabilities not reflected on partnership books are nevertheless to be considered in valuation). The judgment was entered before the valuation date selected by the trial court. We cannot say it was abuse of discretion for the lower court to consider this fact when calculating the fair market value of appellee's interest in the partnership. Whether or not Mt. Thor can successfully collect its judgment from the corporate successor to the partnership is not a question properly before us.

Appellant next argues that the lower court erred in failing to assign a monetary value to a leasehold interest held as an asset by the partnership. The lower court declined to establish any value for the lease in question because it contained a nonassignment clause and therefore could not be transferred without the prior consent of the lessor. We are cognizant of the difficulties faced by the lower court when confronted with the problem of assigning a monetary value to property for which fair market value is not readily ascertainable. However, while a nonassignment clause may complicate the process of establishing the market value for a lease, the mere inclusion of such a clause does not render a mineral lease worthless.

It is well established that a grant of the exclusive right to mine coal is a sale of the coal in place which creates a fee interest in favor of the lessee. *Lichtenfels v. Bridgeview Coal Co.,* 344 Pa.Super. 257, 262–263, 496 A.2d 782,

785 (1985).[4]   A non-exclusive right to mine coal, while not rising to the level of a fee interest, has property value nonetheless.   *Shawville Coal Co. v. Menard*, 280 Pa.Super. 610, 618, 421 A.2d 1099, 1103 (1980).   The value of a lease may be fixed by expert testimony regarding the income to be derived from the particular use to which the leased property will be put.   *See Boteler v. Philadelphia & R.T.R. Co.*, 164 Pa. 397, 30 A. 303 (1894) (expert may testify regarding value of benefit to be derived from use of leased property).   A court may consider both the replacement value of the subject of a lease and the income derived from the use of leased property to establish the market value for a lease.   *See Bellevue–Stratford Co. v. City of Philadelphia*, 366 Pa. 278, 77 A.2d 604 (1951) (replacement value & value of income from property are both relevant in determining value of property not for sale on open market); *see Schenley Land Co. v. Allegheny Co. Board of Property Assessment*, 205 Pa.Super. 577, 211 A.2d 79 (1965) (evidence of income derived from property is relevant to establishing value for use of property).

▋▋▋▋   As we have already stated, the task before the lower court was to set a value on appellee's business interests as of a particular date.   The record clearly indicates that the lease in question was an exclusive lease which granted the partnership a fee interest in the mineral estate [5] and provided a source of income to the partnership.

---

**4.** Pennsylvania recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 304, 32 A.2d 227, 234–235 (1943).   These estates are severable.   Different owners may thus hold title to separate and distinct estates in the same land.   *Id.*

**5.** In *Hummel v. McFadden*, 395 Pa. 543, 150 A.2d 856 (1959) our Supreme Court set forth a three-part test for determining whether a mineral lease constitutes a sale of coal in place thus qualifying as a grant of the mineral estate.   The lessee must receive (1) an exclusive right to (2) mine all the coal;   and (3) the lessee must have paid either a stipulated consideration, be compelled to mine, or be compelled to pay for coal not mined.   *Id.*, 395 Pa. at 551–552, 150 A.2d at 860.   Our review of the lease in question discloses that it is exclusive in the lessee, permits lessee to remove all the coal, and requires lessee to mine and remove coal during the term of the lease.   The lease therefore conveys a fee interest in the mineral estate to the partner-

It was thus an asset in the hands of the partnership for which a value could have been established as of the valuation date chosen by the lower court.[6] It was abuse of discretion for the lower court not to make such a determination. We therefore reverse the lower court's order insofar as it excludes from the marital estate the value of husband's business interest in the mineral lease in question, and remand for the narrow purpose of establishing the value of the lease in the hands of the partnership as of the valuation date.

The fourth issue presented for our review is whether the lower court inappropriately apportioned the marital assets pursuant to the Pennsylvania Divorce Code, *supra.* In this Commonwealth "[m]arital property is not property that is thrown into the pot to be divided equally as in community property states, but property impressed with equitable consideration which must be evaluated before apportionment is considered." *Fratangelo v. Fratangelo,* 360 Pa.Super. 487, 498, 520 A.2d 1195, 1200 (1987). The proper guidelines to be used by a trial court in making equitable distribution of marital property are set forth in section 401(d) of the Divorce Code, *supra.* The clear directive of recent caselaw requires a trial court to take a nonpresumptive approach in applying these guidelines to achieve economic justice between the parties to the divorce as mandated by the Divorce Code, *supra. Fratangelo, supra,* 360 Pa.Superior Ct. at 499–500, 520 A.2d at 1201–1202 (citing *Duff v. Duff,* 510 Pa. 251, 507 A.2d 371 (1986)).

The record in the case *sub judice* discloses that the lower court properly weighed the relevant factors when apportioning the marital assets. The lower court correctly conducted

ship. *See also Smith v. Glen Alden Coal, supra* (construing lease terms which convey fee interest in mineral estate).

6. The trial court has noted that appellant's testimony regarding the value of the coal reserves is inapposite to establishing the value of the lease. Because the lease conveyed a fee interest in the coal reserves to the partnership, the trial court's characterization of appellant's testimony is incorrect. *See Lichtenfels v. Bridgeview Coal Co., supra* and cases cited therein (discussing implications of mineral lease conveying fee interest).

a complete and independent review of the evidence in response to appellant's exceptions to the special master's report. *See Cunningham v. Cunningham, supra* 378 Pa.Super. at 284, 548 A.2d at 614 (trial court is obliged to conduct independent review of evidence when ruling on exceptions). The only respect in which the lower court erred was in failing to establish a value for the mineral lease held as an asset by the partnership. We find no other abuse of discretion or error of law in the rationale behind the trial court's apportionment of the marital property as set forth in the record in compliance with section 403 of the Divorce Code, *supra.*[7] We therefore direct the lower court to add the value of appellant's interest in the mineral lease, once it has been determined, to her proportional share of the marital property as already established.

We next address the question of whether the lower court improperly refused to grant counsel fees in the amount requested by appellant pursuant to the Divorce Code, *supra.*[8] Such fees are not awarded automatically. Rather, it is appropriate to award counsel fees "when necessary to put the parties 'on a par' in defending their rights or in allowing a dependent spouse to maintain or defend an action for divorce." *Johnson v. Johnson,* 365 Pa.Super. 409, 415, 529 A.2d 1123, 1126 (1987) *alloc. den.* 517 Pa. 623, 538 A.2d 877 (1988). Whether or not to award counsel fees and expenses in a divorce case, and the amount to be awarded, is a matter within the sound discretion of the trial court. *Liebendorfer v. Liebendorfer,* 289 Pa.Super. 339, 433 A.2d 480 (1981). Any such award is not intended to be full reimbursement, although it should be sufficient in amount to prevent the denial of justice. *Wolfe v. Wolfe,* 202 Pa.Super. 70, 72, 195 A.2d 272, 273 (1963). We will not reverse the action of the lower court with regard to its

7. 23 Pa.S.A. § 403 (Statement of reasons for distribution) requires the trial court to set forth in any order for the distribution of property entered pursuant to the Divorce Code the reason or reasons for the distribution ordered.

8. *Id.* § 502 (Alimony pendente lite, counsel fees and expenses) provides in pertinent part that the trial court "may ... in proper cases, allow a spouse ... reasonable counsel fees and expenses."

award of counsel fees absent abuse of discretion. *Fitzpatrick v. Fitzpatrick,* 377 Pa.Super. 268, 282, 547 A.2d 362, 369 (1988).

■ The record in the instant case discloses that the special master considered, *inter alia,* both appellant's need and appellee's ability to pay. The lower court noted that appellant's testimony was unconvincing on the subject of the amount necessary to satisfy counsel fees she had incurred in the course of litigation. Further, the trial court found discrepancies in counsel's statement of account. Under these circumstances we find no abuse of discretion in the lower court's award of counsel fees. Consequently we affirm with regard to this issue.

■ The penultimate problem for our consideration is whether the lower court improperly limited appellant's use of discovery. Discovery in conjunction with an action brought under the Divorce Code, *supra,* is governed by Pa.R.C.P. No. 1920.22, 42 Pa.C.S.A. The plain language of Rule 1920.22, as well as the explanatory note, indicates that the trial court may limit discovery to avoid delay in the proceedings. We apply an abuse of discretion standard to the action of the lower court in this regard. *Rohrer v. Rohrer,* 345 Pa.Super. 469, 498 A.2d 919 (1985).

The trial court found that the special master had twice granted continuances in order to accommodate appellant's need for additional discovery. The lower court also determined that appellant failed to move the case along for nearly eighteen (18) months. Finally, the special master allowed appellant a time interval of almost three full months between the second and third hearings in order to obtain and process additional information regarding appellee's business interests. In light of these circumstances, we cannot disagree with the trial court's determination that it was proper to limit discovery. Finding no abuse of discretion on the part of the trial court, we affirm on this question.

The final matter before us is whether the special master erred in refusing to admit into evidence the valuation report prepared by appellant's expert regarding appellee's interest in the partnership. This question is moot. The lower court's opinion and order dated July 8, 1988 admits into evidence the valuation report in question. We will not rule on a moot issue. *In re Gross,* 476 Pa. 203, 382 A.2d 116 (1978).

Order affirmed in part and reversed in part; case remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.